# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CJS INVESTORS, LLC and CARY J. SIEGEL,**

      **Plaintiffs,**

v.                                     Case No: 6:18-cv-374-Orl-31DCI

**MATT BERKE and SSLS-FACTORING, LLC,**

      **Defendants.**

## ORDER

This matter comes before the Court after a hearing on the Motion for Preliminary Injunction (Doc. 15) filed by the Plaintiffs, CJS Investors, LLC (henceforth, "CJSI") and Cary J. Siegel ("Siegel"), and the response in opposition (Doc. 25) filed by the Defendants, Matt Berke ("Berke") and SSLS-Factoring, LLC ("SSLS"). At the hearing, which was held on May 17, 2018, the Court denied the motion. This order explains the rationale behind the denial.

### I.  Background[1]

The instant case involves a falling-out among the owners of a Florida limited liability company: HBC Strategies, LLC ("HBC"). HBC is not a party to this suit. HBC has, however, been sued by SSLS in state court in Georgia. And it is this Georgia suit that gives rise to the instant motion.

Siegel owns CJSI. In October 2014, CJSI filed articles of organization with the Florida Department of State, thereby establishing HBC. Siegel has been president and Chief Executive

---

[1] Except where noted, the following is undisputed.

Officer of HBC since its inception. On the same day the articles of organization were filed, CJSI executed an operating agreement (henceforth, the "Operating Agreement"), which, among other things, sets forth that HBC is to be managed by a board of managers. At the outset, CJSI was the sole member of HBC, owning all 1,000 of HBC's membership units, as well as being the sole manager. In the succeeding months, another non-party, Walter Crossley, invested in HBC. Crossley received 100 membership units in HBC.

In late 2014 and the first half of 2015, a Georgia limited liability company, Red Wizard Group, LLC ("Red Wizard"), made a number of loans totaling several hundred thousand dollars to HBC pursuant to a promissory note (the "Note"). On August 6, 2015, HBC entered into a loan modification agreement (henceforth, the "LMA") with Defendant SSLS, to which Red Wizard had transferred all of its interest in the Note.[2] The LMA altered several terms of the Note, such as the interest rate to be paid by HBC and the deadline for paying off the loan, and authorized HBC to borrow up to another $575,000. The LMA also provided that HBC transferred 460 membership units to SSLS and 50 to Defendant Berke. Thus, as of the date of the LMA, SSLS owned 46 percent of HBC; CJSI/Siegel[3] owned 39 percent; Crossley 10 percent, and Berke 5 percent. As part of this arrangement, Berke was named CFO of HBC.

The LMA included two provisions under which SSLS's 460 membership units could be shifted to Siegel. First, the LMA provided that if HBC paid off the debt on time and with no events of default, SSLS would transfer 20 of its membership units to Siegel. The second potential equity shift involved National Landscape Management, another company controlled by Van de

---

[2] Red Wizard and SSLS are controlled by the same individual, Garrett Van de Grift. SSLS is also a Georgia company.

[3] It is not clear from the record whether the parties intended that CJSI or its owner, Siegel, was to own the 39 percent of HBC, but for present purposes it does not matter.

Grift (who controlled Red Wizard and SSLS). SSLS agreed that if HBC or Siegel helped land a maintenance contract for National Landscape Management with one of HBC's customers, SSLS would transfer 50 of its membership units to Siegel. As with the 20-unit shift, this 50-unit shift was made contingent upon HBC paying off the debt on time and without any events of default.

The parties agree that HBC paid off the debt in August 2017, before it was due. They also agree that prior to that payoff, HBC and Siegel helped National Landscape Management obtain a maintenance contract with one of HBC's customers. However, they disagree as to whether any events of default occurred before the debt was paid. As a result, they also disagree as to whether Siegel is entitled to the 2 percent and 5 percent equity shifts from SSLS. In addition, the parties agreed to have HBC buy out Crossley's 10 percent interest in October 2017, but they disagree as to what happened to that interest. The Plaintiffs contend that the parties agreed to distribute Crossley's 10 percent interest to each owner in proportion to the interest they already owned; the Defendants argue that those 100 membership units are simply being held by HBC.

Thus, the Defendants contend that the current ownership of HBC is essentially the same as it was when the LMA was executed, except that HBC now holds Crossley's share:

| | |
|---|---|
| SSLS | 46% |
| CJS | 39% |
| HBC | 10% |
| Berke | 5% |

The Plaintiffs contend that, as a result of the equity shifts from SSLS to Siegel and the distribution of Crossley's interest, they now own the majority share of HBC:

| | |
|---|---|
| CJS/Siegel | 51.1% |
| SSLS | 43.3% |
| Berke | 5.6% |

Toward the end of 2017, the parties' disagreement over their respective ownership shares came to a head. SSLS and Berke refused to sign an amended Operating Agreement that would

have memorialized CJS and Siegel as the majority owners. In addition, Berke made year-end ownership distributions to himself and to SSLS that the Plaintiffs contend were unjustified. Siegel purported to terminate Berke and cut off his access to the company's books; Berke and SSLS purported to vote themselves onto CBC's board of managers and fire Siegel.

On February 16, 2018, CJS and Siegel filed the instant suit in state court in Orange County, Florida. In their eight-count Complaint (Doc. 2), they seek three declaratory judgments: one declaration that the equity shifts occurred pursuant to the LMA, another declaration that the actions of SSLS and Berke in ousting Siegel from the company are void, and, finally, a declaration that Crossley's membership units were to be split between the existing members rather than held by HBC. (They also assert claims for breach of the Operating Agreement, for breach of the LMA, for breach of fiduciary duty, for conversion, and for conspiracy.) The suit was removed to this Court on March 12, 2018.

The same day the removal occurred in this case, SSLS filed suit against HBC in state court in Georgia. In that suit (henceforth, the Georgia Case), SSLS asserts one claim for breach of the LMA for various actions taking by Siegel while running the company. SSLS also seeks a declaration that several events of default occurred before the loan was repaid and therefore Siegel is not entitled to the two equity shifts from SSLS.

By way of the instant motion, the Plaintiffs seek to enjoin the Georgia court from proceeding with the Georgia Case. The Defendants contend that such an injunction is barred by the Anti-Injunction Act.

## II. Analysis

The Anti-Injunction Act, 28 U.S.C. § 2283, provides that

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Anti-Injunction Act is an absolute prohibition against enjoining state court proceedings, unless the injunction fits within one of the three specifically defined exceptions – that is, unless the injunction is expressly authorized by Congress, necessary in aid of the court's jurisdiction, or required to protect or effectuate the court's judgment. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Id.* at 287, 90 S.Ct. at 1743.

The Plaintiffs do not contend that the injunction they seek is authorized by Congress or required to protect or effectuate a judgment of this Court. They argue that an injunction of the proceedings in the Georgia court is required to protect the jurisdiction of this Court.

The "necessary in aid of" jurisdiction exception to the ban on injunctions exists to prevent a state court from so interfering with a federal court's jurisdiction or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1338-39 (11th Cir. 2012) (citing *Atlantic Coast Line*, 398 U.S. at 295, 90 S.Ct. at 1739).

> Ordinarily, a federal court may issue an injunction "in aid of its jurisdiction" in only two circumstances: (1) the district court has exclusive jurisdiction over the action because it had been removed from state court; or, (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action.

*In re Ford Truck Sales*, 471 F.3d 1233, 1250-51 (11th Cir. 2006).

The Plaintiffs contend that the instant case falls within the second of these two categories, which requires consideration of the distinction between actions *in rem* and actions *in personam*. Under Florida law, an action *in rem* is one taken directly against property – referred to as "the res" – to determine title to it or to affect interests in it. 1 Fla. Jur. 2d Actions § 25 (2018). This is in contrast to an action *in personam*, which is (1) a proceeding to enforce personal rights and obligations brought against the person and (2) is based on jurisdiction over the person, even if it involves rights to ownership of specific property or seeks to compel an individual to control or dispose of it in accordance with the mandate of the court. 1 Fla. Jur. 2d Actions § 24 (2018). Or, more simply stated, an action *in rem* directly affects the property, while an action *in personam* would only affect the property indirectly. *See, e.g., Kinarti v. Kinarti*, 711 So.2d 139, 140 (Fla. 3d DCA 1998) (listing, *inter alia*, suits seeking rescission of a contract for the sale of land, or for specific performance of such a contract, as actions *in personam*). Further confusing matters is the existence of actions *quasi in rem*, defined as "any action between parties where the direct object is to reach and dispose of, or to adjudicate the title or status of, property owned by the parties, or of some interest claimed by them, and duly put in issue by the allegations of the pleadings therein." 1 Fla. Jur. 2d Actions § 27 (2018).

The Plaintiffs contend that the instant case is an action *quasi in rem*, in that the membership interests in HBC are at issue, and that the Court should enjoin the Georgia proceedings to prevent that court from interfering with that property. But in this case, the Plaintiffs have not sought to have the Court exercise direct control over the membership interests in HBC. They seek only a declaration that they are entitled to the two equity shifts based on paying off the loan and a share of the interest formerly held by Crossley. As such, the Court is

not exercising jurisdiction over the res, and therefore there is no possibility of interference by the Georgia court that would warrant issuance of an injunction. Accordingly, as previously announced at the May 17, 2018 hearing, it is hereby

**ORDERED** that the Motion for Preliminary Injunction (Doc. 15) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 24, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE